UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VICTOR EARL THOMPSON, <br><br> Plaintiff, <br><br> v. <br><br> JAMES D. LUTTRULL JR, et al., <br><br> Defendants. | CAUSE NO. 1:21-CV-011-HAB-SLC |

OPINION AND ORDER

Victor Earl Thompson, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Thompson was arrested on the evening of March 16, 2018, in connection with allegations made against him by his "ex-dating partner," Lindsay Huffman. ECF 1 at 2. Earlier that day, Ms. Huffman had been taken to Marion General Hospital after claiming to have been "confined to her home." *Id*. There she made a statement to several Marion Police Department officers—Officer Drew Tittle, Officer Brian Davis, Officer Gregg Melton, and Officer Nathan Thomas—that she had been confined, beaten,

and sexually assaulted by Thompson. *Id*. Based on these allegations, Thompson was booked into the Grant County Jail by Officer Tittle on the following charges: Criminal Confinement - Level 5 Felony, Strangulation – Level 6 Felony, Domestic Battery – Class A Misdemeanor, Interference with Reporting a Crime – Class A Misdemeanor, and Sexual Battery – Level 6 Felony. According to Thompson, Marion City Court Judge Jason McVicker issued a finding of probable cause on these charges on March 17, 2018.

James D. Luttrull, the prosecuting attorney at the time, then decided to "enhance the original charges" on March 19, 2018, after reviewing the case. *Id*. at 3. The Sexual Battery charge was increased to Rape – Level 1 Felony and the Criminal Confinement charge was increased from Level 5 to Level 3. Thompson alleges he made the determination to do so based on Ms. Huffman's statements and on Officer Tittle's opinion of her credibility, and he takes issue with this because he claims Ms. Huffman admitted to "smoking crack" throughout the day of the alleged attack. *Id*.[1] Thompson was detained pending trial, which is currently scheduled for April 5, 2022.[2]

Thompson alleges Ms. Lindsay was deposed in connection with his criminal case on March 1, 2019, approximately one year after his arrest. He states the hearing was "supposed to have been closed to the public," but Judge Dana Kenworthy allowed Ms.

---

[1] Thompson also states a medical report dated March 19, 2018, by Dr. Stephen J. Jasinski of the Marion General Hospital listed Ms. Huffman's condition as "slightly anxious" with a small contusion on her forehead, some superficial abrasions to the bridge of her nose, nostril, and cheeks, and abrasions on her chest but no other visible injuries. ECF 1 at 2.

[2] Thompson has attached a chronological case summary, part of the Information, and part of the Probable Cause Order to his complaint. *See* ECF 1-1; *see also State of Indiana v. Thompson*, case no. 27D02-1803-F1-000001, filed March 19, 2018, available online at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Mar. 18, 2022).

Lindsay's mother to be present in the courtroom. *Id*. at 4. His attorney at the time, a public defender named Bridget Foust, did not ask for Ms. Lindsay's mother to be removed. During the deposition, Thompson alleges Ms. Lindsay contradicted her original statement made to police by admitting the "sexual act between [them] was consensual and fair to say." *Id*. at 4–5. He alleges the rest of her answers to Attorney Foust's questions were "misleading." *Id*. at 5. According to Thompson, once the questions became too difficult, Ms. Lindsay fled the courtroom and refused to return. Following these events, Thompson asked Attorney Foust to file a motion to dismiss the charges. Upon her refusal, he asked Judge Kenworthy to appoint a different public defender, and she did.

In fact, Thompson has been represented by several other public defenders throughout the course of the litigation—David Payne, William Myers, Nathan Meeks, and finally his fifth and current attorney, Jerry Drook. He alleges none of the attorneys have been willing to help him with his case. He believes there is a conspiracy between those attorneys and the deputy prosecutor, Scott Hunt, all because Ms. Lindsay is friends with the mayor of the city of Marion, Jess Alumbaugh.[3] He has sought help from managing public defender, Bruce Elliot, and lead prosecutor, Rodney Faulk, but they have refused to assist him even though the case has "many flaws and can be resolved before even going to trial." *Id*. at 6. He believes Deputy Prosecutor Hunt should have

---

[3] He also alleges Deputy Prosecutor Hunt's deceased family members were racist towards "men of color whom has had a relationship with a white woman." ECF 1 at 6. However, he goes on to state he does "not want to make this about race, just stating a fact of history." *Id*.

3

dismissed the charges once Ms. Lindsay "committed perjury" during her deposition. *Id*. He claims the public defenders' office of Grant County is "corrupt" and works to send men of color to prison often. *Id*. at 9. He then states that "everyone listed in this civil suit has conspired with the Mayor leadership because of a personal obligation to this [Huffman] family, is working not to work on my behalf." *Id*. Thompson believes there was no probable cause to enhance the charges or keep him detained in jail. He requests monetary damages in the amount of $3,000,000.

    In order to prevail on a false arrest or false imprisonment claim brought pursuant to the Fourth Amendment, the plaintiff must show a lack of probable cause. *McBride v. Grice*, 576 F.3d 703, 706-07 (7th Cir. 2009); *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). "Probable cause is an absolute defense to any claim under § 1983 for wrongful arrest or false imprisonment." *Bailey v. City of Chicago*, 779 F.3d 689, 694 (7th Cir. 2015); *see also Norris v. Serrato*, 761 Fed. Appx. 612, 615 (7th Cir. 2019) (the existence of probable cause precludes § 1983 claims "for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention"). "Police officers have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006); *see also Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (Probable cause is a "common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred.")

4

(quoting *Whitlock v. Brown*, 596 F. 3d 406, 411 (7th Cir. 2010)). "Probable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Schenck*, 3 F.4th 943, 946 (7th Cir. 2021), *reh'g denied* (Aug. 13, 2021), *cert. denied*, 142 S. Ct. 818 (2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). It is "assessed objectively based on the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Young*, 987 F.3d at 644 (quotation marks and citations omitted).

Here, Thompson asserts there was not probable cause to arrest or detain him. However, he admits Ms. Huffman, whom he describes as his dating partner, went to the hospital for injuries she allegedly sustained and while there informed the police officers she had been confined, beaten, and sexually assaulted by Thompson. He states Officer Tittle found her account credible. One of the crimes Thompson was originally charged with was Domestic Battery, a Class A Misdemeanor, which the Indiana Code defines as the knowing or intentional touching of a family or household member in a "rude, insolent, or angry manner." Ind. Code § 35-42-2-1.3(a). Based on these facts, there was probable cause to arrest Thompson for Domestic Battery at the very least. *See Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000) ("[S]o long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest . . ..") (citation omitted); *see also Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth that matters."). Moreover, a seizure is "reasonable under

5

the Fourth Amendment when it is based upon probable cause regardless of the severity of the offense involved." *Woods*, 234 F.3d at 993 (recognizing even warrantless arrests for misdemeanors, where probable cause was based on a third party's complaint involving events that did not occur in the presence of the arresting officers, can comport with Fourth Amendment reasonableness standards).

Thompson asserts Ms. Huffman was not credible because she "admitted [to] smoking crack" throughout the day of the incident, but he does not allege she informed the officers of that fact at the time she made her original statement to them or that they otherwise knew she was on drugs. Moreover, even if the officers did know she was using crack cocaine that day, it would not automatically make her account incredible. A reasonable officer could still believe a person using drugs had been domestically battered. *See Woods*, 234 F.3d at 997 (noting probable cause can exist even based on "uncorroborated citizen complaints" that were "questionable," delayed in reporting, inconsistent, and/or possibly retaliatory in nature).

Thompson also claims the doctor's report from the hospital somehow disproves probable cause. Not only is the alleged report dated March 19, 2018—several days *after* the initial probable cause determination and arrest—but it does not contradict a finding of probable cause for domestic battery on its face either. According to Thompson, the report indicated she had a small contusion on her forehead, some superficial abrasions to the bridge of her nose, nostril, and cheeks, and abrasions on her chest. The Class A Misdemeanor Domestic Battery charge did not require evidence of any injury, so the fact the report shows she some sustained injuries only strengthens the probable cause

6

determination. *See* Ind. Code § 35-42-2-1.3(a); *see also* Ind. Code § 35-42-2-1.3(b)(3) (the charge can be a Level 6 felony if "[t]he offense results in moderate bodily injury.").[4]

Although Thompson states no probable cause existed for an arrest on the enhanced crimes he was ultimately charged with, a Fourth Amendment claim cannot succeed if there was probable cause to arrest him for *any* offense. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (noting the Supreme Court has "rejected the rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of the arrest") (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see also United States v. Williams*, 495 F.3d 810, 817–18 (7th Cir. 2007) (once officers established probable cause arrest a defendant, "it is irrelevant that their investigation eventually found evidence of other crimes, that he was originally charged with those other crimes, or that the [sic] those crimes were charged based on an investigation that dragged out longer than was warranted by their original suspicion"). The fact that Prosecutor Luttrell sought enhanced charges several days later does not negate the existence of probable cause at the time he was arrested or extinguish the probable cause necessary to detain him accordingly. Thus, Thompson has not stated a Fourth Amendment claim, whether

---

[4] Even if the officers were subsequently made aware of the doctor's report (or Ms. Huffman's alleged retraction of her testimony a year later), they had "no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause. This is true even if sound police technique would have required such further investigation.") (internal citation omitted). *Woods*, 234 F.3d 979 at 997.

categorized as a false arrest or a wrongful pretrial detention, against any of the officers. *See Norris*, 761 Fed. Appx. at 615.

Nor may he proceed on a claim for malicious prosecution based on the prosecutor's decision to seek enhanced charges following his initial arrest and the subsequent probable cause determination made by Judge McVicker. As noted by the Seventh Circuit:

> After *Manuel*, 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention. 137 S. Ct. at 917–20. The problem is the wrongful custody. '[T]here is no such thing as a constitutional right not to be prosecuted without probable cause.' *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). But there *is* a constitutional right not to be held in custody without probable cause.

*Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018) (emphasis in original). Here, as noted above, there was probable cause to arrest him, and Thompson does not allege any of the officers or Prosecutor Luttrell falsified any reports or made any false statements or material omissions in connection with Judge McVicker's probable cause determination to detain him. He simply disagrees with the eventual characterization of the charges. *See id.* at 670 ("[Section] 1983 cannot be used to contest ongoing custody that has been properly authorized."). These allegations do not state a claim.

Additionally, many of the defendants Thompson names are either immune from liability or not amenable to this type of lawsuit. As to Judge Kenworthy, he claims she improperly allowed Ms. Huffman's mother to attend her deposition hearing. However, "[a] judge has absolute immunity for any judicial actions unless the judge acted in absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). "A judge will

8

not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of his authority; rather, [s]he will be subject to liability only when [s]he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (internal quotation marks and citation omitted). Here, there is no suggestion Judge Kenworthy lacked jurisdiction to preside over Thompson's criminal case, and both courtroom management and the determination whether to seal certain hearings to the public fall well-within the scope of that jurisdiction.

With regard to the prosecuting attorneys involved in his criminal case, as noted above, he alleges Prosecutor Luttrell made the decision to enhance his charges, Deputy Prosecutor Hunt refused to drop the charges after Ms. Huffman allegedly contradicted her original testimony and failed to force Ms. Huffman to continue after she left the deposition, and Lead Prosecutor Faulk refused to assist him with a pre-trial disposition of the case. However, "[p]rosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Absolute immunity shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Id*. (internal quotation marks and citation omitted). Because Thompson's suit challenges the defendants' discretionary prosecutorial decision-making actions—undoubtedly part of the judicial phase of the criminal process—the claims against them may not proceed.

9

He has also sued Mayor Alumbaugh, but he does not delineate any actions of the Mayor; instead, Thompson simply alleges he was included because he is friends with Ms. Huffman's family. However, Mayor Alumbaugh cannot be held liable in his individual capacity because he was not personally involved in any of the events described. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *see also Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) (A lawsuit pursuant to § 1983 against an individual requires "personal involvement in the alleged constitutional deprivation to support a viable claim.") (citations omitted).

With regard to the remaining defendants, "[i]n order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal quotation marks and citation omitted). However, a private individual can act under color of law when she is a "willful participant in joint action with the State or its agents." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (citation omitted). "This requires evidence of a *concerted effort* between a state actor and that individual." *Id*. (internal quotation marks and citations omitted) (emphasis in original).

While the conduct of private actors can transform them into state actors for § 1983 purposes, the facts must permit an inference that defendant's actions are "fairly attributable to the state." *Id*. (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). This is called the "conspiracy theory" of section 1983 liability. *Spiegel*, 916 F.3d at 616. To establish such a claim, a plaintiff must allege: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id*. (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)). "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Id*. (quoting *Fries*, 146 F.3d at 458).

Here, Thompson questions the competency of his five public defenders. He takes issue with Attorney Foust's decision not to challenge Judge Kenworthy's allowance of Ms. Huffman's mother in the courtroom during her deposition and her decision to withdraw from the case. He further alleges his other four public defenders have refused to "work with [him]" in any way (ECF 1 at 6)—an assertion that is belied by the voluminous docket entries shown on the chronological case summary Thompson has attached to the complaint (ECF 1-1 at 1–29)[5]—and have not filed the requests for dismissal and other motions he has asked them to submit to the court.

---

[5] *See also State of Indiana v. Thompson*, case no. 27D02-1803-F1-000001, filed March 19, 2018, available online at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Mar. 18, 2022).

11

However, in the case of a criminal defense attorney, even an appointed public defender, the actions of the attorney are generally not fairly attributable to the State. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *see also McDonald v. White*, 465 Fed. Appx. 544, 548–49 (7th Cir. 2012) ("In any case, it is frivolous because a court-appointed public defender is not a state actor, and thus cannot be sued under 42 U.S.C. § 1983.") (citing *Polk Cty.*, 454 U.S. at 325). The actions described by Thompson all fall within the traditional functions counsel provides to a criminal defendant during the pendency of a case, so the public defenders are not liable to Thompson under section 1983. Even if Thompson's vague assertions of a conspiracy between the public defenders, the prosecutors, and the judge are credited—allegations based on the undefined friendship between Ms. Huffman's family and Mayor Alumbaugh—the claims still fail. *See Srivastava v. Cottey*, 83 Fed. Appx. 807, 810 (7th Cir. 2003) ("Although [plaintiff] alludes to a conspiracy involving [her public defender], the prosecutors, and the judge, the acts she points to as evidence of [the public defender's] involvement—urging a defendant to accept a plea agreement and agreeing to a continuance—are traditional defense counsel functions which do not bring [the public defender] into the scope of § 1983.") (citing *Polk Cty.* 454 U.S. at 317 n. 4).[6]

---

[6] Thompson mentions race in his complaint several times. However, he then states, "I do not want to make this about race." ECF 1 at 6. Accordingly, the court will take him at his word. He also definitively states, "Everyone listed in this civil suit has conspired with the Mayor leadership *because of a personal obligation to this [Huffman] family.*" *Id*. at 9 (emphasis added). *See e.g. McMillian v. Litscher*, 72 Fed. Appx. 438, 441 (7th Cir. 2003) (Plaintiff pled himself out of court not by "plead[ing] conspiracy in general

Finally, Thompson has sued Ms. Hoffman, who is a private individual. Other than an alleged familial friendship with Mayor Alumbaugh, the only allegations against Ms. Hoffman relate to her reporting the alleged crimes of March 16, 2018, to the police and testifying against him in the resultant criminal case. Even if the court were to assume the original report to the police was false and that she lied under oath—facts which are far from settled based on the complaint's allegations—the claims against her would still fail. As the Seventh Circuit has noted, "the mere act of filing false police reports is not actionable under § 1983." *Spiegel*, 916 F.3d at 617. Moreover, witness immunity shields her from suit based on her testimony. *Canen v. Chapman*, 847 F.3d 407, 415 (7th Cir. 2017) ("[W]itnesses enjoy absolute immunity . . .. The rule is designed to aid the search for truth by limiting any fear of recrimination, which in turn decreases any attendant motivation to self-censor.") (internal citations omitted). Therefore, the complaint does not state a claim against Ms. Huffman or any other defendant.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

---

terms," but by accusing the defendants of "conduct that is not conspiratorial."). In any event, Thompson has not alleged any actionable conspiracy claims under either 42 U.S.C. § 1983 or § 1985. *See e.g. Spiegel*, 916 F.3d at 616; *Ma v. CVS Pharm., Inc.*, 833 Fed. Appx. 10, 14 (7th Cir. 2020), *reh'g denied* (Nov. 12, 2020), *cert. denied*, 141 S. Ct. 2737 (2021) (dismissal appropriate for failing to adequately allege conspiracy claims).

13

For these reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915A because various defendants are immune from suit and because it fails to state any claims.

SO ORDERED on March 21, 2022.

                               s/ Holly A. Brady
                               JUDGE HOLLY A. BRADY
                               UNITED STATES DISTRICT COURT